Next case on our call this morning is agenda number 12, case number 106678. Edwin A. Burnett, public defender of Cook County v. the Honorable Lawrence Terrell, judge of the Circuit Court of Cook County. Mr. Chief Justice, and may it please the Court. You may proceed, sir. My name is Lester Finkel. I'm here on behalf of the public defender, Edward A. Burnett, and I would also like to reflect for the record that Mr. Burnett is here in court to consultate. This case involves a rather unusual set of circumstances. It's an original action for mandamus or writ of prohibition under Rule 381 against a particular judge of the Circuit Court of Cook County, Judge Terrell, because what Judge Terrell did in this situation, some people have been characterizing it as a mystery, but I would characterize it as an outrage, because beginning in the middle of May 2008, Judge Terrell decided there was one particular assistant public defender in his courtroom who he did not want there. He ordered her, beginning in the middle of May, eight consecutive cases from, I believe, the original record that we provided was from May 22, 2008 until June 5, 2008, where Judge Terrell ordered her to stand down. And I want to emphasize the language that Judge Terrell used in that case. If you look at the case of Brad Scianna, Judge Terrell told Ms. Tolwer, you are going to stand down or I am going to put you down. In the case of Neal, Kathy Neal, Karen Tolwer's supervisor, a lady by the name of Polly Roe Taylor, stepped up to the bench, tried to make an objection as the judge was removing Karen Tolwer, and instead the judge ordered her to stand down, to step away from the bench or else be held in contempt of court. This went on eight different times until June 10th of 2008. On June 10th, there was a petition for leave to file this mandamus action with this court, and on that date for 52 cases in a row, Judge Terrell instead recused himself from every case that Ms. Tolwer stepped up on. Has this been done to any other assistant public defenders before this judge? No. Well, yes and no, Your Honor. I would characterize that Judge Terrell's statements to Polly Roe Taylor, in which he ordered her to stand down or else be held in contempt of court, is a similar type of situation. But if you're asking any other assistant public defender who was normally assigned to his courtroom, no, that did not happen. Is there anything stated in the record in any of these cases as a basis for the judge's demand that this assistant public defender stand down? No, and that's what I would characterize as the outrage, because just starting that, we have the affidavits. We have the affidavits of Judge Terrell, of his supervising judge, Judge Ponce de Leon, of Karen Tolwer, and of her supervisor, Polly Roe Taylor. You have the original supplemental record that was filed back on June 10th when the petition was filed, and then you have a two-volume supplemental supplemental record that was filed, I believe, at the end of September when the reply brief was filed. This Court granted leave to file it. And in all of that, there is no explanation from anyone as to why. The best that we have is Judge Terrell's statement in his affidavit, I believe it was paragraph 4, at the back of the Attorney General's brief, in which he stated, the reason that I remove Karen Tolwer from all these cases is because of, quote, concerns over her ability to represent felony defendants. That is an inarticulated, unidentified, subjective statement by Judge Terrell with all respect. Basically, Judge Terrell was saying, I don't want Karen Tolwer in my courtroom because I don't want Karen Tolwer in my courtroom. That's not a justification. If you look at all the case law that's there, if you look at the statute, if you look at the Sixth Amendment, and if you look at the ARDC, what Judge Terrell did was totally unjustified. If you start with the Public Defender Act, the Public Defender Act was modified in 1991 by Public Act 87111. And this was a hard-fought act because the whole point was that at one point prior to 1991, the Public Defender's Office was under the judiciary. The public defender was selected by the judges in the circuit court of Cook County. The assistant public defenders were screened by the judges in the circuit court of Cook County. There was an effort at that time by the public defender in place then to try and become an independent agency. And what happened? It was passed, Public Act 87111. The public defender was appointed now by the president of the county board with confirmation of the county board itself. And it is separate. And the language in the Public Defender Act specifically says that it is the public defender, as we speak today, it is Mr. Burnett who has the authority to pick his assistants, to decide where those assistants are supposed to be placed, to decide who those assistants are going to represent. Not the judge, not Judge Terrell, not the other judges in the Fourth Municipal District or the other judges in the circuit court. It is up to the public defender at that time. And that's where the outrage comes in that Judge Terrell perpetrated. Because it was twofold. One, the best I can state is for secret reasons, for reasons known only to Judge Terrell, for his concerns that Karen Tauer might not provide good representation to a felony defendant, he removed her from all of her cases. Counsel, you're not asking this court to make a statement that a trial court can never remove an attorney from representing a client, are you? I'm not making a statement, no, Your Honor. I'm not saying that. You're saying based on these facts that it was certainly an abuse of discretion since there wasn't any rationale given? Is that more in line with what you're saying? Absolutely. But there's also a second part to it. But absolutely, the removal of Karen Tauer was done for some inarticulate, unstated reason, and that was an abuse of discretion. But there's a second part to the Public Defender Act. Because if you look at the record, Judge Terrell didn't simply remove Karen Tauer from every case. What he did was he chose the replacement. And that's also an invasion of the authority of the public defender. He didn't simply say, I'm removing the public defender from this particular case, Assistant Public Defender Karen Tauer, and then I'm leaving it to the public defender who to put in her place. Instead, what he did is I'm removing Karen Tauer and I'm specifically appointing you, in that case it was Assistant Public Defender Brian Healy, saying you are going to take over. If we agree with you, what specific order would you want entered in this? What we need is a standard, Your Honor. We need a standard consistent with the case law, consistent with people versus Johnson, people versus Giles, the case law that's already there. Specifically, I'll refer to two cases, People XO Brazen versus Finley, and People versus Hull, which also goes by the name of General Order No. 15, I believe. And in that case, if you have an apparent conflict that can be identified on the record, then that would justify a judge in that particular case to remove the attorney. Counsel, if I may, in following up on Justice Garment's question, what order is it that you want us to enter? What's the procedure of that order? I don't think I understand. You're arguing for a result here. Yes. My question is what is the result you want? What is the order that you want this Court to issue? What's the justification for that order? Well, we need an order setting a standard, Your Honor. Is Your Honor going to the question of mandamus or mootness? Exactly. Exactly. How are we to get where you want us to go? Well, addressing first the point of mootness, this isn't moot. And that was the whole point that we provided the additional two-volume supplemental record at the end of September. Judge Terrell's actions in removing Karen Tallwer for the 52 cases in a row did not result in this issue being moot simply because Ms. Tallwer was removed. She wasn't removed eventually from Judge Terrell's courtroom on September 9th. What he did was he created the crisis. I'm sorry. You're making a fine argument. I don't mean I don't want to interfere with your argument any longer than I have to, but you still will not answer what it is that we're supposed to do and it's all said and done. What is it you want? To issue an order of mandamus that tells Judge Terrell that he is not authorized to do this? Is that what you're looking for? Essentially a writ of prohibition. Yes, Your Honor, a writ of prohibition stating to Judge Terrell and any other judges that this may occur in the future under the public interest exception or the recurrence exception that this cannot be done unless there is some one articulated reason based on conflict or gross incompetence in the case at hand that's tied to that case that could then be reviewed later on in case that particular defendant appeals so that you have a basis and not some arbitrary whimsical subjective analysis by a judge to say I don't want you simply because I don't want you. And then two, that if a judge goes and does remove an attorney, that judge does not have the authority to pick and choose the substitute. Does that answer Your Honor's question? It does somewhat, yes. And I would add that anywhere in that order would you want us to make any mention of the Supreme Court's authority to choose who can and cannot practice law in the State of Illinois? Well, it depends on what Your Honor means by that question. Even this Court. I thought it was clear. Right. I refer to People v. Johnson because in this Court you had the case of People v. Johnson where an attorney from the State Appellate Defender went and wrote what you characterized as a very deficient brief, didn't follow with, didn't conform with Rule 341, didn't adhere to the necessary elements. You asked the State Appellate Defender to go and have that attorney rebrief it because the record was 8,000 pages. That attorney then again wrote a deficient brief. And what did this Court do? This Court didn't go and then say to the State Appellate Defender, listen, we want this particular attorney, we want Mr. Scheidel or we want Mr. Finkel or we want a particular attorney to now handle it. You simply said this attorney has exhibited gross incompetence in this particular case, evidenced by two attempts to try and file a brief that was deficient. Find another attorney. And I hope I'm answering Your Honor's question, but the point is that under the Public Defender Act, under ARDC, which this Court has set up, the judge doesn't have the authority to pick and choose. Mr. Finkel, would the second part of the relief you're requesting necessarily be dictated if we find, as you would have us find on the first part, namely, that the trial judge abused his discretion in having no reason to remove the public defender? Wouldn't that end the issue? Anything that we go further and say, and by the way, you also didn't have the right to choose somebody. Would that necessarily be the import of our ruling or would it be dictated if we went that way? I would say it's not dictated, Your Honor, simply because this is something that is subject to occurrence and reoccurrence. It is not simply restricted to the situation with Judge Turrell, as is evident by the fact that we have an amicus brief from the public guardian's office. We need a standard. We need the public guardian needs a standard, the state's attorney, the attorney general. We all need standards. When you have court-appointed counsel, and I'll acknowledge that the standard for court-appointed counsel is different from the standard for retained counsel based on United States v. Gonzalez-Lopez. Let me take you back to the Johnson case. Yes. Appointed counsel. I dissented in that case, and I think because the majority ordered the public defender to reassign the case to only a, quote, staff attorney. And I think on that point, because I felt it interfered with the public defender's office to make that choice themselves, I dissented. So do you agree with the Johnson case? Well, I would agree with what Your Honor is referring to, that even if you find an attorney has committed gross incompetence, you then can't go and designate who the replacement attorney is. So as far as restricting the state appellate defender from only picking a particular attorney who's a staff attorney versus a contract attorney, I would agree with that analysis, Your Honor. But then you also have the People v. Hull case, which is an appellate court case, but it basically mirrors this very situation. In that case, it was another assistant public defender who, for lack of a better term, annoyed the circuit court. And because the judge was suitably annoyed, he then said to assistant public defender Julie Hull, you are barred from my courtroom from now on. That was held to be impermissible. Why? Because this court has set up a mechanism for making sure that if an attorney might be incompetent, an attorney is not selectively incompetent. You're either incompetent to practice in all the courtrooms, or you're not incompetent to practice in all the courtrooms. And if Judge Terrell had a problem with Karen Talwar, the proper mechanism for him to do would be to say, well, maybe I have concerns over your ability to represent felony defendants. In that case, I refer you to the ARDC. Referring to another case, People v. Giles. In that case, the attorney actually was falling down drunk in the courtroom. Gross incompetence. The attorney was removed as the attorney of record for that defendant. Perfectly justifiable. But I ask you the hypothetical question. If two weeks later that same attorney showed up in court sober with a new client and a new case, the incompetence that was exhibited two weeks ago doesn't carry over. It doesn't bleed over to the new case. There has to be a connection, a nexus, between an action that occurred by the attorney and the case at hand. And that's where the outrage is here. Because we originally provided eight transcripts where the judge ordered her to stand down or I'll put you down. But in fact, if you look at Karen Talwar's affidavit, there were 15 cases in a row in which Judge Talwar, starting somewhere around I believe May 9th or May 10th of 2008, simply said without explanation, you are removed from this case. You are unassigned from this case. I am appointing Mr. Healy to this case. And every time she tried to speak, he wouldn't even let her speak. And then you have the affidavits of Judge Turrell and Judge Ponce de Leon. This issue came up. There were conversations, for lack of a better term, with Judge Turrell. But no resolution was reached. And one could say that there's a mystery. Well, why was Judge Turrell doing this? But the judge had the opportunity to provide the explanation himself in his own affidavit, in Judge Ponce de Leon's affidavit, in his own supporting record. He did nothing. He just didn't want that attorney because he didn't want that attorney. And this is not, sadly, a unique situation. This is a situation where judges are overstepping their authorities, and that is why I argue that a writ of prohibition in this case would be appropriate, but a judge is overstepping his authority to say not merely that I'm the arbiter of facts or the finder of facts, but I can decide who your attorney is, I can decide to remove your attorney, and I can decide who to replace that attorney with. And that is unconscionable. And that is an infringement on the very authority of the public defender of Cook County, that authority that was created in 1991 by statute. And that was a quite hard-fought statute down in the legislature to try and go and remove the public defender from the auspices, from the control of the judiciary at that time, the Circuit Court of Cook County. And then also, Your Honor, in the brief, as I've cited, there are multiple other Sixth Amendment issues. I've cited the Smith case from California, the McKinnon case from Alaska, the Durfee case from Michigan, the Weaver case from Florida. All of these things dictate that a judge cannot simply remove an attorney for a secret reason. That is impermissible. That is unconscionable. Do Your Honors have any further questions? No? Thank you very much. Thank you, Mr. Chief Justice, and may it please the Court. My name is John Schmidt, and I represent the Honorable Lawrence Terrell, who is a judge of the Circuit Court of Cook County. And I know Mr. Finkel has used words like outrage and unconscionable, but I'm going to respectfully disagree with him there. I'm going to say that this is to recharacterize this as a dispute between two dedicated public servants who I think are both trying to do the right thing and have been both trying to do the right thing, Judge Terrell and Mr. Burnett, both, as I said, who are trying to do the right thing and have a dispute that is now before this Court. Is there any evidence in the record that would support the judge's conclusion that he doubted the ability of this attorney? Your Honor, he did not state reasons. Mr. Finkel is correct on that. I think he was reluctant to put on the record reasons that might embarrass this assistant public defender. But no, he did not state reasons on the record. Was that in an affidavit that followed? He did that. Well, that affidavit was limited because the law indicates that matter outside the record can be used to support a mootness argument, so I did not feel it appropriate to go into great detail in that affidavit and bring in matters outside the record except insofar as it would be necessary to make a mootness argument. So, no, it is not a very detailed affidavit in that regard. How do we know that he didn't make any statement because he didn't want to embarrass Ms. Talwar? That, well, he, you, that's not, I have to say that's not necessarily in the record either. I don't think that's really in the record either. That's an important point, isn't it? Mr. Schmidt, what would this court, are you saying that a trial judge has carte blanche authority for whatever reason to remove an attorney in a case without giving any reason? No. Okay. No. So without, I didn't think you were, and without having any record of the reason, let's just take as a given, although you were quite frank and said it's not in the record, let's take as a given that Judge Turrell, to protect the public defender, did not make a record as to his reasons for removal. What is this court left with to make a determination as to whether Judge Turrell abused his discretion or not in letting, in letting this attorney, or telling this attorney that they couldn't come into his court? No. Your Honor, I agree. That is problematic. The public defender could possibly have done some sort of motion to reconsider and present that to Judge Turrell and ask him to do that. And Judge Turrell, as I've acknowledged, did not state his reasons at the time that he removed this defender. But one point I want to make from Your Honor's mention of abuse of discretion, these writs are extraordinary writs. Ordinarily, they are not used to address abuses of discretion or to address situations where the defendant is not able to act, but may act wrongfully. And I think the public defender is taking a step past extraordinary here, because ordinarily, when these writs are requested against a judge, the petitioner asking to use those writs will ask that a judge's actions in association with the specific case or cases be undone. Or for mandamus, that the judge be asked to do something the judge is required to do. And here, the public defender complains about what the judge did in a number of cases, but doesn't say to undo that. The public defender seems to, in effect, be asking for an injunction to stop the defendant from using those writs. And that is why we ask this court, which I think is expressing understandable concerns, to please proceed cautiously if it does decide to grant relief, or if it decides that the relief requested by the public defender is unwarranted, as we suggest. The court may also choose to provide guidance, but please... Would it be appropriate, Mr. Schmidt, for this court to issue a writ and indicate that Judge Torell has to give his reasons as to the reason for not allowing the attorney to participate in actions in his courtroom? In other words, a writ saying Judge Torell should not do this in the future without giving reasons. Is that what you're... Well, because I guess this public, and that's your mootness argument in part, this public defender is no longer in his courtroom anyway. That's correct, Your Honor, that's correct. I think this court could grant relief along those lines. And also for the purpose of guiding other judges who might be faced with this situation. But again, there is... Mr. Finkel seems to want this court to indicate that this was improper without having any rationale in the record, and it's also improper to say who has to come in, what public defender has to be assigned to this courtroom. Well, as to Part 2, this is a situation... At the time, what was going on was one assistant public defender was removed. There was another one assigned to the courtroom, and as a practical matter, Judge Torell was just saying, I'm removing you. And of course, I think it was logical to point to the other one assigned, who was assigned to his courtroom, and say, well, this will be your case now. I don't think he was trying to necessarily dictate assignments made by the public defender. He was recognizing reality, like in the Giles Court, when one attorney from a law firm was removed, the case went to them. And the other one that was there. I don't think Judge Torell was trying to assume the authority to choose assistant public defenders, to the extent that Mr. Finkel says. How do we know that, Mr. Schmidt? How do we know he wasn't trying to pick Mr. Healy? Is that in the record? It's not in the record. But Judge Torell's affidavit does indicate, I believe, that there are three assistant... Well, the record may, I think, in some instances, reflect which assistant public defenders are present. And it would show Mr. Healy and Ms. Tallworth. So if she ended up being removed from a case, it was logical that it was going to go to the other assistant public defender in his courtroom. I think Justice Garmon's question goes a little deeper, though. I mean, if his intention could have been all along to get Mr. Healy, not giving a reason for removing Tallworth, that was her question. How do we know that that wasn't his intention to handpick and then be able to say, well, it's logical to assume we'd go to the other public defender who was left here? Without any reasons, without anything in the record, we don't know what the judge did and why. No, and I agree. It would be somewhat speculative to say exactly why I was just... I think the record does reflect, though, that those were the two people available in the courtroom. And Judge Torell's affidavit indicates concerns over the ability of one to represent felony defendants. But that is, I have to concede, that is a possibility. And the two may have been tied together, too. But again, I would... Why don't you answer Justice Fitzgerald's question? What would the order of this court look like? You said we have to be careful. What would you like to see? Well, on Judge Torell's behalf, of course, we'd like to see an order denying relief because mandamus and prohibition are not appropriate in these types of cases that involve abuses of discretion. But if this court chooses... I would say that judges should not remove criminal defense attorneys or assistant public defenders without holding a hearing in which reasons are provided on the record if the judge should find it necessary to remove... And I believe the case law that both sides have cited... You left the state's attorney's office out of the two that the order should cover, the public defenders or private counsel defending. Well, we have... Your Honor could choose to include assistant state's attorneys, but we have no indication that that's happening in the state's attorney's office. Would it be any different for state's attorneys? Are you suggesting that the court could tell some assistant state's attorney, you stand down, somebody else will cover this case without providing any kind of reasons? I'm not suggesting that, but there are some... But we don't have a case before the court indicating that that is happening, and I think in this situation the relief should be framed as narrowly as possible. And there are some constitutional concerns with regard to criminal defendants that would not necessarily be present for an assistant state's attorney. But again, if this court feels that there is a need to include assistant state's attorneys, it certainly has the authority to do that. I would not question its authority to do that, but I think first of all, as I mentioned... Would that be an advisory opinion in the area that you're now discussing? That's what I would be afraid of, Your Honor, exactly. If the court went into assistant state's attorneys or even assistant attorney generals like myself, there's no indication that this is happening to assistant attorney generals. So that, I think, would be the concern that it might... Again, Mr. Hinkle will have an opportunity to address this as well, but wouldn't it be an advisory opinion if we limited it to public defenders? It could be because this is not going on in Judge... Because this particular assistant public defender is not assigned to Judge Turrell's courtroom anymore. And interestingly enough, Mr. Hinkle's supplemental record ended up showing that in five of the eight cases that the public defender originally complained of where she was removed, she ended up reappearing in those cases later on. But it's pretty well agreed that we're not capable of having the relief of undoing the cases where he removed her. I think it is pretty well agreed, especially where she did return to represent at least five of those defendants. I think that's correct. I think there is, as Your Honor said, some danger of an advisory opinion, even with public defenders, because the matter is now moot. I think the court would have to find that it would be in the public interest to go on and decide the issue, or that it would be a vital question to the administration of justice in order to go ahead and decide it. It strikes me that it's too bad this isn't a trial court, because I think Mr. Schmidt and Mr. Finkel could work out an agreed order here. I think both sides have fleshed out many of the legal principles that apply. I'll just reiterate that some of the Sixth Amendment holdings would say that removal of defense counsel would be appropriate in situations where there's incompetence of counsel, where there's some type of impairment of counsel. This court has recognized a conflict of interest as being another one, even if the defendant is willing to accept the lawyer. That's another situation, and another one is where a defense attorney continuously asks for continuances, and the demands of the court schedule require that the attorney be replaced. So again, if this court does decide to grant some relief, we would ask that the court not tie the hands of Judge Terrell or any other circuit judge in this state from protecting the Sixth Amendment rights of the defendants in those situations. I think that is very crucial. I think it is very important. And I see the amber light is on. If there are any more questions, I am very happy to address them. And I'll just sum up. We do believe that mandamus and prohibition are not appropriate in this situation, because this does involve a matter that is committed to judicial discretion. And even if that discretion was abused, mandamus and prohibition would not be appropriate. I have to ask you a question. If we don't use one of those writs, how do we get to the very place that you suggested is the correct place to be? And that's one reason I would suggest not using the writs. But I believe in some of the case law, I think the Strauka case is one case that indicates this. It says that the court can provide guidance if it believes that that is important to the case. It can provide guidance to the administration of justice. This may be a case where the court could say mandamus doesn't fit, prohibition doesn't fit. But this is important. We want to provide lower court's guidance in this situation. So lower court, hold the hearing before you do this. Circuit courts, state your reasons for doing it, and here are the types of reasons that would justify it. And I believe the court could do that, and that circuit judges would follow that guidance. Do we have to invoke our supervisory authority to do that? I think you could do that, and yes, I think you, even though this was not styled as an action for a supervisory order, yes, I think the court could do that, and that it would be appropriate if the court believes that that type of guidance is necessary. Thank you very much, Your Honors. Mr. Finkle, if I could catch you before you launch. What do you think about what we were just talking about, whether this can be done with a supervisory order rather than one of the two risks? I think this court has the authority to issue a supervisory order under Rule 383, but I still do believe that 381 is the proper mechanism, because these circumstances do fall under specifically a writ of prohibition. Which would require recognition of the relaxation of the mootness doctrine for the public interest. Is that correct? It would, Your Honor. There's four prongs to it, and I don't remember it off the top of my head, but I actually have it written over here. But the second prong specifically is that there is a need for an authoritative decision in order to provide future guidance. The third prong is the situation is likely to occur. This court wrote that in Holley v. Montes. This court also wrote that in the Sinkes case, which involved an election. It was not considered to be an advisory opinion in Sinkes, even though the election had already occurred. Here you are correct. The specific removals of Karen Talwar has already occurred. She did go, and because of the later developing offense after June 10th of 2008, she wound up being removed from Judge Terrell's courtroom. You have Parley-Rose Affidavit explaining why she was removed from that. But that doesn't take it out of the realm of a writ of prohibition. But as far as this Court's authority to go and issue a supervisory order under Rule 383, I have no dispute on that, and I would agree with Mr. Schmidt on that. And just two other points, Your Honor, for purposes of rebuttal. One, there was a question asked about sort of that Mr. Healy happened to be the only other person in the room, that there's a room-wide search for another assistant public defender. Since he was there, that's the attorney who Judge Terrell selected to go and take over all the cases. I would have to disagree with that, and for that I'd point to the transcript from the Kathy Neal case, where the supervisor for both of them, the supervisor who's in the 4th Municipal District, Parley-Rose Taylor, stepped up to try to object, to try and assert her authority as the representative of the public defender to say, no, I don't want Mr. Healy to be in this. I want either Karen Talwar or I want to have the authority to decide who should be involved in that case. And Judge Terrell forced her to step away from the bench, to actually stand down, step away, or be held in contempt. It's the language of Judge Terrell that's just, you know, with all respect, just, again, I'll repeat the word outrageous, telling people I'm going to put you down, I'm going to hold you in contempt. You've been unappointed, you've been unassigned. That language is just beyond the scope of authority for somebody who's a jurist. And that leads me to the last point. Mr. Schmidt mentioned that an extraordinary writ is only appropriate for matters that don't involve an abuse of discretion. There was no discretion here. That's why we're here. I would agree with, I believe it was you, Mr. Chief Justice, who said that if Mr. Schmidt and I could have talked this out and worked it out, it might have been resolved. Or, I'm sorry. If I wouldn't want to take it away from Justice Thomas. Okay. It was Justice Thomas. Sorry. But there was no discretion here. There was simply unilateral action by a judge who felt that everything within his courtroom was totally within his control and completely ignored the authority of the public defender, the authority of Mr. Burnett, and the attorney-client relationship that had been built up in several cases, including one that had been pending for six or seven months, and was ready to go to trial. I'm sorry, ready to go to a pretrial motion to quash arrest and suppress evidence. It's not your position that a trial judge wouldn't be involved with exercise of discretion. I think it's your point, isn't it, that in this case there is no showing that there was any exercise of discretion. Correct. There was no discretion. There was no statement. There was just simply variations on the words, get away, step away, you're no longer the attorney in this case. And for all those reasons, Your Honor, we respectfully ask that this Court issue a writ of mandamus, a writ of prohibition, and provide that guidance for future judges in future situations involving court-appointed counsel. Thank you. Thank you, Mr. Hankel. Case number 106678 will be taken under advisement.